THE STATE, THE UNITED RAILROAD AND CANAL COM-PANY, PROSECUTORS, v. THE COMMISSIONER OF RAIL-ROAD TAXATION.

1. When the Delaware and Raritan Canal Company, the Camden and Amboy Railroad Company, and the New Jersey Railroad and Trans-portation Company were consolidated into one corporation by the name of The United Railroad and Canal Company, by the acts of 1867 and 1872, each of these corporations had an irrepealable contract with the state, on the subject of taxation, which was embodied in the consolidating act.

2. A corporation having an irrepealable charter which provides for a special mode of taxation, and that "no other or further tax or impo-sition shall be levied or imposed upon the said company," may consent to other taxation, or a different mode of assessment from that specified in its charter, by the acceptance of subsequent legislative acts, without impairing the exemption from general taxation contained in its charter. In such event, the new taxation becomes part of the original contract, and modifies its terms to that extent, leaving the restriction therein on further taxation in full force.

3. A grant of lands of the state to a corporation by an act of the legislature, for an actual consideration, is a conveyance, and the grantee takes, not as the recipient of corporate franchises, but as owner by the same title as would be acquired by an individual grantee, and with all the rights and privileges annexed. An exemption from general taxation contained in such legislative grant, is a right which gives value to the estate, and is part of the thing granted, and cannot be modified or repealed without the consent of the grantee.

4. The United Railroad and Canal Company having an irrepealable charter and a contract therein with the state on the subject of taxation, is not taxable under the first section of the general railroad tax law of 1873, (*Acts*, 1873, *p.* 112,) and not having surrendered their former contract and accepted the provisions of that act in lieu thereof, has not subjected itself to taxation, as provided by the tenth section.

On *certiorari*.   In matter of taxation.

Argued at June Term, 1874, before Justices DALRIMPLE, DEPUE and VAN SYCKEL.

For the prosecutors, *J. B. Vredenburgh* and *I. W. Scudder.*

For the defendant, *J. H. Lippincott* and *J. Weart.*

The opinion of the court was delivered by

DEPUE, J.   The commissioner of railroad taxation has returned to the comptroller a valuation of property of the prosecutors, amounting to the sum of $5,860,875, with a view to subject the prosecutors to taxation for county, township and municipal purposes, under the act of the legislature, approved April 2d, 1873.   (*Acts*, 1873, *p.* 112.)

The act under which these proceedings were taken, is the same which was construed in the opinion delivered in the case of *The State, The Morris and Essex R. R. Co., pros.,* v. *The Commissioner of Railroad Taxation, ante p.* 228.   It was decided in that case that the act of 1873 provided for the taxation of two classes of corporations—those which had irrepealable contracts with the state on that subject, and those which had not; and that the latter were taxable under the first section of the act, and the former under the tenth section.

By the tenth section the legislature did not impose any taxation.   It merely tendered to the corporations therein

referred to a proposition, giving them the option to accept the mode of taxation adopted in the first section, in lieu of that which was provided for in their charters, or by special laws for their benefit. Indeed, with respect to corporations of that class, the legislature was precluded by constitutional prohibition from proceeding further.

As stated in the opinion in that case, the inquiry must be, whether the prosecutors come within the first or second classes of corporations embraced in that act.

The prosecutors are a corporation created by the acts of 1867, (*p.* 114,) and 1872, (*pp.* 567, 1402,) by the consolidation of the Delaware and Raritan Canal Company, and Camden and Amboy Railroad Company, and the New Jersey Railroad and Transportation Company. The first two of these companies have been consolidated into one corporation by the act of February 15th, 1831; and the consolidation, which was effected by the acts of 1867 and 1872, was that of these two companies with the New Jersey Railroad and Transportation Company.

The Delaware and Raritan Canal Company and the Camden and Amboy Railroad Company, were incorporated on the 4th of February, 1830, and the New Jersey Railroad Company on the 7th of March, 1832.

In each of these acts of incorporation a special provision for taxation was contained, which was expressly declared to be in lieu of all other taxation. It has been so frequently adjudged that these provisions in the incorporating acts of these companies were contracts which were irrepealable, that the grounds of such adjudications need not be restated. In this respect, the situation of these prosecutors is different from that of the Morris and Essex Railroad Company. Indeed, it was conceded on the argument that the prosecutors could not be taxed under the act of 1873, unless the legal status of the prosecutors, or of the constituent corporations on the subject of taxation, had been altered by their voluntary consent in such a way as to justify the imposition of such taxa-

tion as was contemplated by the act of 1873, without their consent.

The return made to the commissioner of taxation comprises lands owned and occupied by the prosecutors, situate in seven of the counties of this state. The lands are mainly such as were owned by the companies before the consolidation, and the title is in the name of some one of the several corporations which were consolidated. When two corporations are consolidated into one by act of the legislature, an exemption from taxation contained in the charter of one of such corporations, will not, by such consolidation, be extended to the property of the other, whose charter contained no such exemption, which, by the consolidation, became joint property; and in the absence of a clear expression of an intent to the contrary, the property of each of the united corporations will be held, after such consolidation, with the same privileges and burdens as originally attached thereto. *The P. W. & B. R. R. Co.* v. *Maryland*, 10 *How.* 376 ; *Tomlinson* v. *Branch*, 15 *Wall.* 460 ; *The Delaware Railroad Tax*, 18 *Wall.* 206.

When the consolidation of the Camden and Amboy Railroad Company and the Delaware and Raritan Canal Company was effected in 1831, both of these corporations had irrepealable contracts on the subject of taxation, which were then in force and were embodied in the consolidating act. *State, C. & A. R. R. & T. Co., prosecutors,* v. *Woodruff*, 7 *Vroom* 95. It was not insisted on the argument that such contracts with these two companies had been surrendered or modified by any act of theirs before the passage of the act relating to transit duties. (*Acts*, 1869, *p.* 226.) But it was contended that the New Jersey Railroad Company had surrendered its irrepealable contract, and by the acceptance of subsequent legislation had made its property and franchises taxable at legislative will. The acts which it was contended had this effect are the acts entitled, "An act relative to the tax and transit duty payable to the state by the New Jersey Railroad and Transportation Company," approved April 18th, 1846, and the supplement to the company's charter, approved March 16th, 1864.

By the eighteenth section of the act incorporating this company it was enacted that " from and after the completion of the said railroad, and after the expiration of five years, the said corporation shall pay into the treasury of this state, yearly and every year, a tax of one quarter of one per cent. upon their capital stock paid in ; and after the expiration of ten years, a tax of one-half of one per cent. upon the true amount of the capital stock of said company, and that no other or further tax or imposition shall be levied or imposed upon the said company ; provided, nevertheless, that in addition to the above, if at any time hereafter, any railroad shall intersect, or be attached to the railroad hereby established, so as to make a continued line of railroad carrying passengers across the state of New Jersey, between the states of New York and Pennsylvania respectively, then it shall be the duty of the treasurer of the company hereby chartered, under oath or affirmation, to make quarterly returns of the number of passengers, and the number of tons of goods, wares and merchandise transported over the whole line of the road hereby chartered, to the treasurer of this state, for the time being, and thereupon to pay the said treasurer of this state at the rate of eight cents for each and every passenger, and the sum of twelve cents for each and every ton of goods, wares and merchandise so transported thereon, in the manner aforesaid."

Before the passage of the act of April 18th, 1846, a continuous line of railroad, carrying passengers across the state of New Jersey, was made by the intersection of the company's road with a railroad constructed between New Brunswick and Trenton, and the transit duties on through passengers and freight prescribed in its charter, became payable. The act of April 18th, 1846, related to that condition of affairs.

By the first section the treasurer of the state was authorized to receive from the company the yearly sum of $4000, being the tax of one-quarter of one per cent. on the capital stock paid in, until the year 1849, with the proviso that nothing therein contained should affect the right of the state to the payment after that date, of the tax of one-half of one per

centum, required by the eighteenth section of the company's charter. By the second section, the transit duty on passengers was changed from the rate of eight cents for each passenger transported over the whole line, as prescribed by the charter, to eight cents for every dollar received from each passenger so carried. This act, it was therein declared, should not go into effect until the acceptance of its provisions by the company as part of its charter should be certified, and the power of the legislature to alter, modify, or repeal *this act,*" whenever, in their opinion, the public good require it, was expressly reserved. (*Acts,* 1846, *p.* 231.)

This act simply modified the eighteenth section of the company's charter in one particular, with respect to the transit duty on passengers, leaving the provisions of that section as to tax on capital stock and transit duty on merchandise, and the exemption from general taxation unaffected; and the power of alteration and repeal is expressly limited to the alteration or repeal of the provisions of this new act. If that power should be exercised, the effect would be merely to recall the privileges therein conferred, and remit the company to its rights under its original charter.

The provisions of the supplement to the company's charter of March 16th, 1864, which were relied on by counsel, are those contained in the third section. By that section it was enacted, " that it shall be lawful for the state, by general law affecting in like manner all railroads in this state, except those now having irrepealable contracts of exemption in their charters, to impose on said company, for state purposes, such other additional tax as the legislature may by law direct; but said tax shall not, in any one year, together with the amount paid in that year to the state for tax and transit duties provided in said charter, exceed the amount by said law imposed upon any other railroad in this state, such amounts to be estimated by a per centage on the amount of the capital stock and funded debt, or upon the gross receipts from railroad business of said several railroad companies. (*Acts,* 1864, *p.* 294.)

It cannot be successfully contended that the taxation under the act of 1873, is in compliance with the terms of this section. The words "upon any other railroad in this state," in limiting the amount of tax to be imposed, is placed in sharp contrast with the phrase "all railroads in this state, except those now having irrepealable contracts of exemption in their charters, in defining the kind of general law by which such taxation should be made.

Taxation, under the act of 1873, would necessarily make the tax on this company exceed that of other railroads having irrepealable charters, and also be in excess of the amount levied on such as have charters subject to repeal, but are not subject to the payment of transit duties.

Neither of the acts referred to, (1846 and 1864), even if unrepealed, would justify an assessment on the New Jersey Railroad Company such as is provided for by the act of 1873. It will, therefore, not be necessary to decide in this proceeding what particular rights and immunities of the several corporations, contained in the original acts of incorporation with respect to taxation, were transferred to and became vested in the prosecutors by the consolidation acts. The immunity of each corporation when the consolidation was effected, so far as concerns the case now under consideration, was substantially the same.

But the important legislation is the act relative to transit duties, passed on the 4th of March, 1869. (*Acts*, 1869, *p.* 226.) The provisions of this act were accepted by the prosecutors after the consolidation, which was effected by the act of 1867.

The first section of the act of 1869 abolished all transit duties, whether on passengers or freight. By the second section it was enacted that all companies theretofore paying transit duties to the state, should thereafter pay annually a tax of one-half of one per cent. upon the cost of their respective works, including all property not otherwise taxed, "until the legislature shall, by general law, impose an uniform state tax, equally applicable to all railroad and canal corporations

of this state, and said companies shall pay such uniform tax; and until such general law be passed, no company heretofore paying transit duties as aforesaid, shall in any year pay a less sum, as tax to the state, than that paid by it for taxes and duties of all kinds for the year 1868; and said amounts shall be paid by them in equal quarterly payments, and no other tax or impost shall be levied or assessed upon said companies."

The third section provides that this act shall not apply to any corporation having a contract with the state in reference to taxation, unless within three months after its passage, "this act and its provisions be accepted by the board of directors of such corporations in place of such contract," and until such acceptance such corporations were required to pay taxes as previously required by law.

By this act provision is made for superseding special contracts with corporations paying transit duties whose charters are irrepealable, by subtituting another mode of taxation by mutual consent. Transit duties were immediately abolished, and a tax on the cost of the property of such companies not otherwise taxed, adopted in lieu thereof, with a stipulation that the legislature may, by general law, impose an uniform state tax equally applicable to all railroad and canal companies of this state; which tax, when imposed, such corporations should pay, and that no other tax or impost than that provided for in this act should be levied or assessed upon such companies.

Upon the acceptance by the prosecutors of the provisions of this act, their former contracts on that subject were superseded, and a new contract, embodying the provisions of this act, became the contract between them and the state.

But the act of 1873 is not an act of uniform taxation within the meaning of the act of 1869. The power of taxation in the latter act provided for is by an uniform tax, applicable to all railroad and canal corporations of this state. The act of 1873 applies only to railroad companies. It does not extend to canal companies.

State, United R. R. & Canal Co., pros., v. Comm'r of Railroad Taxation.

It was argued that the court, in construing the act of 1869, may substitute the disjunctive "or" for the conjunctive "and," and read the phrase "railroad and canal corporations," as if it were railroad or canal corporations. Such a mode of dealing with a statute or contract would violate the primary rule of construction, which is to ascertain the intention from the words used, without rejecting or supplying anything, when the language as it stands is capable of a meaning not inconsistent with other parts. As applicable to these prosecutors, there is peculiar propriety in adhering to the literal terms of the act in this respect. One of the corporations included in the consolidation is a canal company. All are engaged in the transporation of freight. On the plainest principles of justice they are entitled to insist that they shall not be placed at a disadvantage in the matter of taxation with other corporations engaged in the prosecution of the same business.

But the chief argument on this part of the case, in support of this assessment was, that contracts which oust the state of the sovereign power of taxation, were to be strictly construed, and that when once departed from by the consent of the privileged party, they ceased to have any binding force. This argument was applied not only to the act of 1869, but more especially to the prior acts of 1846 and 1864, in relation to the New Jersey Railroad Company.

The first of these propositions is conceded. But the existence of a contract of this nature with these prosecutors in their original acts of incorporation, is too firmly established to be a debatable question. *The State* v. *Brannin*, 3 *Zab.* 484; *C. & A. R. R. Co.* v. *Commissioners of Appeals*, 3 *Harr.* 71; *The State* v. *Berry*, 2 *Harr.* 80; *The State* v. *Gardner*, 1 *Zab.* 557; *The State, N. J. R. R. & T. Co., pros.,* v. *Hancock, Collector*, 6 *Vroom* 537.

If, by the second of these propositions be meant that an exemption from general taxation once surrendered cannot be resumed, it is also conceded. But if it be meant that a corporation having such exemption by an irrepealable charter cannot contract with the state for a modification of the special taxation therein imposed, and yield part and accept other

terms in lieu thereof, without surrendering the whole, the argument is without legal foundation.

A contract with a corporation once made is the same as a contract with an individual. Both are equally within the protection of the constitutional provision. Neither can be impaired except by compact and agreement of the parties, founded on a sufficient consideration, and the original obligation remains intact, except so far as altered by mutual consent.

The contract the prosecutors rely on is an agreement on their part to pay a per cent. on capital stock, together with certain transit duties, and an agreement on the part of the state that no other tax or impost shall be levied or assessed upon them; in other words, that they should not be subject to general taxation in any form at the will of the legislature. Corporations having contracts of this character with the state, may consent to other taxation, or to a different mode of assessment from that specified in their charters, by the acceptance of subsequent legislative acts, without impairing the general exemption in their charters. In such event, the new taxation, or new mode of assessment, becomes part of the original contract, and modifies its terms to that extent, leaving the restriction therein on further taxation in full force.

The views above expressed by the court with respect to the legal construction of the act of 1873, and of the legislation in relation to the prosecutors, are probably sufficient to dispose of this case. But a part of the property returned being held by the prosecutors under a special grant by the legislature, the right of taxation over it may also involve other considerations than those already discussed. The premises referred to are what is known as the Harsimus Cove property, which was conveyed to the prosecutors by the state by an act of the legislature, passed on the 30th of March, 1868. (*Acts*, 1868, *p.* 551.)

By this act of cession the premises described were granted to the United Companies, their successors and assigns, to hold in the corporate name of The New Jersey Railroad and Transportation Company, or otherwise, with power to fill up and

improve the same, and to erect thereon wharves, piers, canal slips, storehouses, depots and other buildings and shops and car and engine houses and appendages, and also to extend their bulkheads, solid filling and piers, to the exterior line adopted by the Riparian Commissioners, and also with the further power to construct a branch railroad from the premises to their main track, and for that purpose to exercise the power of condemnation prescribed by the act incorporating the New Jersey Railroad and Transportation Company. It was further enacted therein that the state should not, without the consent of the companies, make any grant of the lands or of any easements therein which lie in front of the lands granted, and that their title should extend to the exterior lines then fixed, and to any other exterior line which should subsequently be fixed further east, and that certain streets laid over said property should be vacated, and that no street should thereafter be laid or opened thereon, except by consent of the said companies.

Provision was made for taxation in the following language: " That all acts and parts of acts heretofore passed, which limit the amount of land that may be held by the said United Companies, or either of them, for the purposes of their charters respectively, or which subjects such lands, if exceeding a certain quantity, to any other tax than that which is imposed upon the said companies respectively by their respective charters or acts of incorporation, are hereby repealed; provided, however, that such parts of said property, and the improvements to be made thereon as shall be used for other than railroad, canal, depot, trans-shipping or landing purposes, (but no other portions thereof,) shall be subject to local and municipal taxation."

For this conveyance of lands with the rights, privileges and immunities connected therewith, the grantees paid to the state as the consideration, the sum of $500,000, that sum being adjudged to be the value by the commissioners under the provisions of the act.

This is not a grant of franchises. The instrument of grant

is not a charter within the sixth section of the general incor-
poration act. (*Nix. Dig.* 168.) It is a conveyance of land
for an actual and not a presumptive consideration. The
grantees take not as the recipients of corporate franchises, but
as owners by the same title as would be acquired by an in-
dividual grantee. The thing granted is the premises described,
with all the rights and privileges thereto annexed. The
extinguishment of highways already laid out—the surrender
of the sovereign power to open highways in the future—the
covenant not to grant any lands or easements in front of the
premises so as to interpose another right between them and
the navigable waters, and the exemption from general taxation,
are rights which give value to the estate granted. By the
operation of the grant, these rights are annexed to the lands
and will pass with them as appurtenances to any subsequent
grantee. *State of New Jersey* v. *Wilson*, 7 *Cranch* 154.

The constitutional prohibition forbidding the passage by
the states of any law impairing the obligation of contracts,
embraces all contracts executed or executory, whether between
private individuals, or between the state and individuals or
corporations. *Green* v. *Biddle*, 8 *Wheat.* 1. A grant of lands
which are part of the public domain, when once made by
the state cannot be annulled by a subsequent act of the leg-
islature, which assumed to annul the grant because it
was fraudulently obtained. *Fletcher* v. *Peck*, 6 *Cranch*
87. This constitutional protection is thrown over every
part of the grant, as well as over the legal incidents annexed,
as over the thing granted. It extends to the right of immunity
from taxation, when such right is expressly made part of the
grant. In *McGee* v. *Mathis*, 4 *Wall.* 143, the facts were
that the state of Arkansas having received a grant from the
United States of swamp and overflowed government lands,
issued transferable scrip, receivable for lands at the selection
of the holder. In the act authorizing the issuing of this scrip,
it was provided "that to encourage by all just means the pro-
gress and the completing of the reclaiming of such lands by
offering inducements to purchasers and contractors to take up

such lands, all said swamp and overflowed lands shall be exempted from taxation for the term of ten years, or until they shall be reclaimed." The plaintiff became the purchaser of a large amount of this scrip. After such purchase the legislature repealed this section, and provided by law for the taxation of such swamp and overflowed lands, sold or to be sold, precisely as other lands. Subsequently to such repeal the plaintiff took up and paid for several sections of these lands under the scrip he held. A tax having been assessed thereon, it was held that the contract of the state was to convey the land for the scrip, and to refrain from taxation for the specified period; that the exemption of the lands for which the scrip was receivable was a principal element in its value, and the repeal of the exemption was the destruction of an element of value. In delivering the opinion, the Chief Justice says: "The state could no more change the terms of the contract by changing the stipulated character of the land to be conveyed, than it could abrogate the contract by refusing to receive the scrip at all in payment of the land." New Jersey v. Wilson has already been cited. That case was decided on a statement of facts familiar to lawyers of this state. Briefly, they were these: By an act of the legislature of the colony of New Jersey, passed on the 12th of August, 1758, commissioners were appointed to treat with the native Indians for the extinguishment of their title to lands in the colony. As part of the consideration of the purchase of the Indian title, the commissioners were authorized to purchase a tract of land for the settlement of the Indians, to be held in trust for their use. It was also provided that the lands to be purchased for the Indians should not thereafter be subject to any tax, any law, usage, or custom to the contrary thereof in anywise notwithstanding. *Allinson's Laws* 220. In pursuance of this act, the commissioners obtained releases from the Indians, extinguishing their claims to all the lands in the colony, and purchased for their use a tract of land containing upwards of three thousand acres in the county of Burlington. By an act passed on the 2d of December, 1801, new commis-

sioners were appointed, who were authorized to sell these lands and apply the proceeds for the benefit of the Indians. (*Acts*, 1801, *p*. 131.) In 1803 a sale was made by the commissioners. No reference was made either in the act of 1801, or in the conveyance of the lands to the privilege of exemption from taxation. In 1804 the legislature passed an act repealing that section of the act of 1758 which exempted the land from taxes, and taxes were thereupon assessed upon them, and the payment demanded. The Supreme Court of the United States held that the exemption from taxation, granted by the act of 1758, was annexed to the lands purchased, and passed with them into the hands of the grantees, although the act authorizing the transfer contained no reference to the exemption. And the repealing act was declared unconstitutional as impairing the obligation of the contract made with the Indians, in that it deprived the purchasers, who succeeded to the rights of the Indians, of the enhanced value of the lands arising from their being exempted from taxation.

The cases cited are the decisions of a court whose decisions are binding on this court. The principles therein adjudicated are applicable to the relations of the prosecutors to the state in the matter of taxation of the lands acquired by legislative grant. The lands so acquired can be subjected to taxation only in the manner and to the extent specified by the act of 1868, unless an additional power of taxation of them has been acquired by the acceptance by the prosecutors of the transit duty act of 1869.

The conclusion is that the prosecutors have irrepealable contracts with the state on the subject of taxation. Not having filed a surrender of such contracts, they have not subjected themselves to taxation under the 10th section of the act of 1873, and they are not liable under the 1st section, inasmuch as the act of 1873 is not the taxation by general law provided for by the act of 1869.

But these proceedings will not be set aside at present. The prosecutors may be taxable on some part of the Harsimus Cove property under the act of 1868, and probably some other

real estate returned may be such as is taxable as not being within the exemption of the prosecutors' charters.   This taxation should have been made under the general tax law. But the property having been returned under the act of 1873, the public authorities may have omitted to assess it under the general law.   The assessments made will be retained with a view to permit application to the court to correct such assessments in the hands of the collectors, in order to make them conform to what they would have been if made under the general law.

If no such application is made during the present term, a rule may be entered setting aside the assessment and all proceedings.

Justices DALRIMPLE and VAN SYCKEL concurred.